## UNITED STATES OF DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### CIVIL ACTION NO. _____

| | | |
|---|---|---|
| **JOSÉ AMILCAR CHOTO PLEITEZ, GLORIA ESPERANZA CHOTO, MARIA YOLANDA MEJIA DE HERNANDEZ, PEDRO ANTONIO LEVIA, SNAIJJDER STANLEY LEIVA RIVAS, & MARIA FRANCISCA GOMEZ VIUDA DE RAMOS** | ) ) ) ) ) ) ) | **COMPLAINT FOR EXTRAJUDICIAL KILLING; CRIMES AGAINST HUMANITY; CRUEL, INHUMAN, AND DEGRADING TREATMENT; ARBITRARY DETENTION; WRONGFUL DEATH;** |
| Plaintiffs; | ) ) ) ) | **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; CIVIL CONSPIRACY; LOSS OF** |
| v. | ) ) ) ) ) | **PARENTAL GUIDANCE AND SUPPORT; AND LOSS OF CONSORTIUM** |
| **THE REPUBLIC OF EL SALVADOR, FORMER MINISTER OF DEFENSE, GENERAL DAVID MUNGUÍA PAYÉS; THE ARMED FORCES OF EL SALVADOR, SIXTH MILITARY DETACHMENT; SERGEANT SANTOS MANUEL CORETO RAMIREZ; SOLDIERS: RONALD ALBERTO RODRIGUEZ POZO, JUAN OVIDIO SANTIAGO GARCIA, JOSÉ ALEXANDER SANTAMARIA CONSTANTE, MANUEL DE JESUS SANTOS SANCHEZ & ARELY ELIZABETH ESQUINA DE RAMOS; AND THE NATIONAL CIVIL POLICE** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## PRELIMINARY STATEMENT

1.     This is an action for compensatory and punitive damages for torts in violation of

international law, federal law, and domestic common law, including the prohibitions against

1

extrajudicial killing; torture; crimes against humanity; cruel, inhuman and degrading treatment; arbitrary detention without trial; wrongful death; the intentional infliction of emotional distress; civil conspiracy; loss of parental support; and loss of consortium.

2.      Plaintiffs institute this action against General David Munguía Payés, the former Minister of Defense for El Salvador; the Armed Forces of El Salvador, Sixth Military Detachment; Sergeant Santos Manuel Coreto Ramírez, Soldier Ronald Alberto Rodríguez Pozo, Soldier Juan Ovidio Santiago García, Soldier José Alexander Santamaría Constante, Soldier Manuel de Jesús Santos Sánchez and Soldier ARELY Elizabeth Esquina de Ramos (hereinafter collectively referred to as "the soldiers"); and El Salvador's National Civil Police (hereinafter, "PNC") who were involved in the gross and systematic violation of the human rights of the Plaintiffs and their next of kin, under the actual or apparent authority of Salvadoran military, law enforcement, and political authorities. All the individuals mentioned above were or are officials of the Salvadoran government.

3.      Plaintiffs José Amilcar Choto Pleitez, Gloria Esperanza Choto, Maria Yolanda Mejia de Hernandez, Pedro Antonio Levia, Snaijjder Stanley Leiva Rivas, and Maria Francisca Gomez Viuda de Ramos, by and through their attorneys, Carrillo & Carrillo, LLC bring this action under the Alien Tort Statute (hereinafter referred to as "ATS") and the Torture Victim Protection Act, (hereinafter referred to as "TVPA") pursuant to 28 U.S.C § 1350 to redress their civil and legal rights.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1350, and under the principles of pendent and ancillary jurisdiction. 28 U.S.C. § 1350 provides federal jurisdiction for "any civil action by an alien for a tort only, committed in violation of the law of nations or

a treaty of the United States." Section 1350 Note creates a federal cause of action specifically for extrajudicial killing and torture when such acts are committed under the authority or under color of law of a foreign nation.

5.     This Court also has Supplemental Jurisdiction over Plaintiffs' state law claims based on 28 U.S.C. § 1367.

6.     The United States District Court for the Southern District of New York is the proper venue of this action pursuant to 28 U.S.C. § 1391.

## PARTIES

PLAINTIFFS - JOSÉ AMILCAR CHOTO PLEITEZ, GLORIA ESPERANZA CHOTO, MARIA YOLANDA MEJIA DE HERNANDEZ, PEDRO ANTONIO LEVIA, SNAIJJDER STANLEY LEIVA RIVAS, & MARIA FRANCISCA GOMEZ VIUDA DE RAMOS

7.     Plaintiffs José Amilcar Choto Pleitez is a native and citizen of El Salvador, who resides in the State of Tennessee. He brings this action in his individual capacity and on behalf of his son, José Fernando Choto Choto, who was abducted by El Salvador Armed Forces and presumed tortured and killed on February 18, 2014.

8.     Plaintiff Gloria Esperanza Choto is a native and citizen of El Salvador, who resides in the State of California. She brings this action in her individual capacity and on behalf of her son, José Fernando Choto Choto, who was abducted by El Salvador Armed Forces and presumed tortured and killed on February 18, 2014.

9.     Plaintiffs Pedro Antonio Leiva and Maria Yolanda Mejia Hernandez, husband and wife, are natives and citizens of El Salvador, who reside in the State of New York. They bring this action in their individual capacities and on behalf of their son, Oscar Leiva Mejia, who was abducted by El Salvador Armed Forces and presumed tortured and killed on February 18, 2014.

10.     Plaintiff Snaijjder Stanley Leiva Rivas is a native and citizen of El Salvador. He resides in the State of California. He brings this action in his individual capacity and on behalf of his father, Oscar Leiva Mejia, who was abducted by El Salvador Armed Forces and presumed tortured and killed on February 18, 2014.

11.     Plaintiff Maria Francisca Gomez Viuda de Ramos is a native and citizen of El Salvador, who resides in the State of Oregon. She brings this action in her individual capacity and on behalf of her son, Francisco Hernandez Gomez, who was abducted by El Salvador Armed Forces and presumed tortured and killed on February 18, 2014.

> DEFENDANTS – THE REPUBLIC OF EL SALVADOR, GENERAL DAVID MUNGUIA PAYES, ARMED FORCES OF EL SALVADOR, MILITARY DETACHMENT NO. 6, SERGEANT SANTOS MANUEL CORETO RAMIREZ, SOLDIER RONALD ALBERTO RODRIGUEZ POZO, SOLDIER JUAN OVIDIO SANTIAGO GARGIA, SOLDIER JOSE ALEXANDER SANTAMARIA CONSTANTE, SOLDIER JOSE MANUEL SANTOS SANCHEZ AND SOLDIER ARELY ELIZABETH ESQUINA DE RAMOS, AND EL SALVADOR NATIONAL CIVIL POLICE (PNC)

12.     Defendants, the executive, judicial, and military branch of the Republic of El Salvador assisted in covering up the events that transpired on February 18, 2014, and participated in the constant harassment, torture, and persecution of the Plaintiffs.

13.     Defendant, General David Munguía Payés is a native and citizen of El Salvador. At all relevant times herein, Defendant Munguía Payés was the Minister of Defense of El Salvador. He possessed and exercised control over the Armed Forces of the country, which includes the Army, Navy and Air Force, as well as reserve and auxiliary forces.

14.     Defendant, the Armed Forces of El Salvador, including Military Detachment No. 6, at all relevant times herein, possessed and exercised control over the soldiers operating within its command, including Defendants, Sergeant Santos Manuel Coreto Ramírez, Soldier Ronald Alberto Rodríguez Pozo, Soldier Juan Ovidio Santiago García, Soldier José Alexander

Santamaría Constante, Soldier Manuel de Jesús Santos Sánchez and Soldier Arely Elizabeth Esquina de Ramos.

15.     Defendants Sergeant Santos Manuel Coreto Ramírez, Soldier Ronald Alberto Rodríguez Pozo, Soldier Juan Ovidio Santiago García, Soldier José Alexander Santamaría Constante, Soldier Manuel de Jesús Santos Sánchez and Soldier Arely Elizabeth Esquina de Ramos are natives and citizens of El Salvador and reside in El Salvador. The soldiers were, at all times relevant herein, duly appointed and acting officers, servants, employees and agents of the Sixth Military Detachment, a unit of the Armed Forces of El Salvador, which is directly controlled by the Minister of Defense. The soldiers were acting for, and on behalf of, and with the power and authority vested in them by the Armed Forces of El Salvador and the Sixth Military Detachment; specifically controlled by the Minister of Defense, performing and engaging in conduct incidental to the course of their duties. These Defendants engaged in conduct outside the performance of their lawful functions when they forcibly abducted three young men and the young men were tortured and killed on February 18, 2014. They are being sued individually and in their official capacity.

16.     Defendant, the National Civil Police (PNC), at all relevant times herein, possessed and exercised control over the police officers operating within its command. The police were, at all times relevant herein, duly appointed and acting officers, servants, employees and agents of the PNC. The police officers were acting for, and on behalf of, and with the power and authority vested in them by the PNC, performing and engaging in conduct incidental to the course of their duties. These Defendants engaged in conduct outside the performance of their lawful functions when they harassed the family members of José Fernando Choto Choto in retaliation for the Choto family's efforts to investigate José's disappearance.  They are being

sued individually and in their official capacity. In addition, the officers of the PNC harassed and tortured the Plaintiffs and their family members because of their efforts in pursuing an investigation of the events that occurred on February 18, 2014.

17. The officers of the executive, the military and judicial branch of the Republic of El Salvador government were involved in the cover up, persecution, and harassments of the Plaintiffs.

## STATEMENT OF FACTS

### Background - Salvadoran Military and National Civil Police Human Rights Violations Against Civilian Suspected Gang Members

18.   According to the United States Department of State, 2019 El Salvador Human Rights Reports, "Human rights issues included allegations of unlawful killings of suspected gang members and others by security forces; forced disappearances by military personnel; torture by security forces; harsh and life-threatening prison conditions; arbitrary arrest and detention; lack of government respect for judicial independence; [and] widespread government corruption....[1]" Many of these human rights violations by the El Salvador's military and National Civil Police are the result of the El Salvador's governmental efforts to combat gang violence and these violations are directed at suspected gang members. These unlawful governmental acts have been an ongoing, widespread and systematic attack against the civilian population of El Salvador.[2]

19.   The major gangs in El Salvador (MS-13 and M-18) control their respective territories and do not allow persons living in another gang's "controlled areas" to enter their territory. If gang

---

[1] United States Department of State, Bureau of Democracy, Human Rights and Labor, available at https://www.state.gov/reports/2019-country-reports-on-human-rights-practices/el-salvador/

[2] See https://www.insightcrime.org/news/brief/el-salvador-military-officers-ordered-executions/

members discover that a person lives in a rival gang's territory and has entered their territory, that person risks being killed, beaten, or not permitted to enter the territory, even by public transportation. (Department of State, El Salvador 2019 Human Rights Report, *available at* https://www.state.gov/reports/2019-country-reports-on-human-rights-practices/el-salvador/).

20.     It is also common for the El Salvador's courts to acquit or dismiss cases involving mistreatment by the military or police, even with substantial evidence implicating the accused officials. (See Footnote 1).

### Harassment, Abuse, and Arbitrary Detention of Plaintiffs' Next of Kin Prior to the February 18, 2014, Abduction

21.     On December 12, 2012, the soldiers of the Armed Forces of El Salvador harassed, mistreated and assaulted Oscar Oswaldo Leiva Mejia. Oscar Oswaldo Leiva Mejia was taken by four soldiers of the HERMES Taskforce and beaten by the soldiers. Oscar's parents reported the assault to the Armenia Police Department.

22.     On December 14, 2012, three soldiers arrived at the Mejia home and threatened Ms. Mejia for reporting the soldiers to the police. The local soldiers continued to harass Oscar when they saw him in town by stopping him, threatening him, and assaulting him.

23.     In November 2013, a group of soldiers took Oscar Oswaldo Leiva Mejia and another young man to the military base, detained them, and proceeded to torture them. Ms. Mejia went to the base to obtain her son's release and upon her arrival, discovered that the National Civil Police of Armenia were already at the base. Oscar was unable to walk after having been tortured by the soldiers. Despite Oscar's obvious injuries, the police did not want Oscar's parents to file a police report and suggested that his parents, "lock him in the house," since it was obvious that the soldiers had a personal vendetta against Oscar.

**The Abduction on February 18, 2014**

24.     On February 18, 2014, six young men—Yudi Nelson Sixto Lopez, Fredy Mauricio Villalobos Castillo, Mario Alberto Martinez Hernandez, José Fernando Choto Choto, Oscar Leiva Mejia, and Francisco Hernandez Gomez (hereinafter collectively referred to as "the victims")—were gathered outside Yudi's house in the San Fernando One Neighborhood of the municipality of Armenia, Sonsonate, El Salvador. Six soldiers of the Armed Forces of El Salvador (hereinafter referred to as FAES), belonging to the Sixth Military Detachment of Sonsonate, were on patrol in the area. The soldiers approached the young men and began questioning them. The soldiers accused the victims of being gang members, which the victims denied.

25.     The soldiers ordered the young men at gunpoint to walk with them, with the exception of Yudi Nelson Sixto Lopez, who was allowed to return to his home. Sergeant Santos Manuel Coreto Ramírez led the group of soldiers—Soldiers Ronald Alberto Rodríguez Pozo, Juan Ovidio Santiago García, José Alexander Santamaría Constante, Manuel de Jesús Santos Sánchez and Arely Elizabeth Esquina de Ramos.

26.     The remaining five young men were taken from the San Fernando One neighborhood (a neighborhood controlled by the Mara 18 Surenos "M-18" gang) in the direction of the San Damian neighborhood (controlled by the Mara Salvatrucha "MS-13" gang)[3]. The victims were forced to walk at gunpoint, passing through the San Fernando Two neighborhood and the San Eugenio neighborhood. They walked for approximately forty-five minutes.

---

[3] Free movement between areas controlled by rival gangs are not permitted. In other words, individuals who live in an area controlled by the M-18 cannot travel to an area controlled by the MS-13.

27.     Upon reaching the San Damian neighborhood, the sergeant stopped them and ordered one of the soldiers to take the IDs and photos of each of the victims. Knowing that they were now in a neighborhood controlled by MS-13, the soldiers told the victims that "if they managed to get out of there, they would prove that they were not gang members." The sergeant then ordered the release of Fredy Mauricio Villalobos Castillo and Mario Alberto Martinez Hernandez. The whereabouts and fate of the remaining men—Oscar Leiva Oswaldo Mejia, Francisco Javier Hernandez Gomez and José Fernando Choto Choto—are unknown but it is presumed that they were tortured and killed by MS-13 gang members or by the military itself.

**The Investigation into Disappearance by Armenia, Sonsonate State's Attorney**

28.     After the abduction and disappearance of the three young men, Plaintiffs José Amilcar Choto Pleitez and Gloria Esperanza Choto, parents of José Fernando Choto Choto, contacted the Attorney General's Office in Armenia, Sonsonate and filed a complaint, which was assigned case number 211-UDVSO-10-14, court reference number 117-2-14. They conducted an investigation into the events of February 18, 2014. At the conclusion of the investigation, there were findings of fact favorable to the named Plaintiffs herein. Specifically, the investigation concluded that crimes had been committed by the six soldiers that abducted the victims.

**Inquiries Made to Ministry of Defense**

29.     Plaintiff José Amilcar Choto Pleitez, a member of the police force (PNC), continued to facilitate searches and inquiries into the disappearance of his son and the other two young men. On February 27, 2014, Plaintiff Choto requested that the Ministry of Defense, National Office of Information and Response, Armed Forces of El Salvador conduct an inquiry into the victims' disappearances. And within the upcoming days, further requests were made to the

Ministry of Defense to conduct an investigation. Defendant, Minister of Defense, General David Munguía Payés, negligently failed to conduct an investigation into the disappearance of the three men.

### Threats and Harassment of Victims' Families

30.    During the investigations and inquiries into their son's disappearance, Plaintiffs José Amilcar Choto Pleitez and Gloria Esperanza Choto received several telephone threats, including demands for ransom by individuals claiming to know the whereabouts of the three missing men.

31.    On two different occasions, there were two home invasions by police and military personnel at Mr. José Amilcar Choto Pleitez's home that threatened the life of the Choto family. The family was also monitored and followed around their neighborhood. The purpose of the harassment and persecution was to prevent them from continuing the investigation.

32.    Mr. José Amilcar Choto Pleitez was harassed by both PNC officers and military personnel while on duty with the PNC.  Fearing for his safety while on duty, Mr. Choto requested that he not be assigned overnight duty with military personnel. Despite his requests, PNC management continued to assign Mr. Choto to overnight patrol alone with soldiers in secluded areas.

33.    On June 19, 2015, Salvadoran Association for Human Rights (ASDEHU) requested that the PNC transfer Mr. José Amilcar Choto Pleitez in order to reduce the risks to his life. The PNC then transferred Mr. Choto to another unit.

34.    The Sixth Military Detachment of the Armed Forces falsely accused Plaintiff, José Amilcar Choto Pleitez of arms trafficking. On June 24, 2015, the Human Rights Ombudsman (PDDH) issued a resolution with reference N. SO-0020-2015 in favor of José Amilcar Choto Pleitez.

35.    On July 24, 2015, the Human Rights Ombudsman issued a report with reference N. SO-0020-2014 condemning the disappearances and blaming the Armed Forces for forcibly disappearing Oscar Leiva Oswaldo Mejia, Francisco Javier Hernandez Gomez, José Fernando Choto Choto. The report also confirmed the repeated harassment of Plaintiff José Amilcar Choto Pleitez.

36.    Plaintiffs, Maria Yolanda Mejia de Hernandez and Pedro Antonio Leiva were also harassed and monitored by police and military officials during the investigations. On July 2, 2015, while the family was at home, four police officers of the National Civil Police abruptly broke into their house and searched it without a warrant. The police officers were very aggressive and kept the family at gunpoint. The purpose of the harassment and persecution was to prevent them from continuing to pressure the government to investigate the events the transpired on February 18, 2014.

### The Prosecution of the Soldiers

37.    After the Attorney General's investigation, the soldiers—Santos Manuel Coreto Ramírez, Ronald Alberto Rodríguez Pozo, Juan Ovidio Santiago García, José Alexander Santamaría Constante, Manuel de Jesus Santos Sánchez and Arely Elizabeth Esquina de Ramos were criminally charged and tried by bench trial on October 19th and 20th, 2015. The presiding judge at the soldiers' trial was known in the local community as a corrupt judge, Judge Gilda María Isabel Cabañas Hurtado, who contrary to the evidence and testimony presented, acquitted the defendants on November 17, 2015. On November 30, 2015, an appeal of the Sonsonate judgment was filed by both the Attorney General and the plaintiffs.

38.    Several months after the soldiers' acquittal, a criminal complaint was filed against Judge Cabañas Hurtado for her involvement in a scam involving aggravated fraud and extortion

against several victims, including an employee of the Attorney General's Office[4]. She was arrested in May of 2017. Her alleged accomplice in the scam, Saúl Antonio Álvarez Servando, is a retired colonel of El Salvador's military.

39.     In January 2016, the Constitutional Chamber of the Supreme Court of Justice held that the criminal case against the Sixth Military Detachment soldiers was to be reopened and the case was sent to the Criminal Chamber of the Supreme Court of Justice. On October 28, 2016, the Criminal Chamber remanded the case to the Criminal Chamber of the First Section of the West, based in Santa Ana. On December 18, 2017, the Santa Ana Criminal Chamber declared the original trial void and ordered a new trial for the soldiers.

40.     In November 2018, all six soldiers were tried and convicted for the forcible disappearance of the three young men in February 2014. Sergeant Santos Manuel Coreto Ramírez received a sentence of eight years, four months in prison; and the soldiers Ronald Alberto Rodríguez Pozo, Juan Ovidio Santiago García, José Alexander Santamaría Constante, Manuel de Jesus Santos Sánchez and Arely Elizabeth Esquina de Ramos, were each sentenced to four years, four months in jail.

## GENERAL ALLEGATIONS

41.     Unless otherwise set forth below, all acts and omissions alleged by the Plaintiffs took place in El Salvador, specifically the Sonsonate region, including but not limited to the municipality of Armenia, and the cities of El Colonia San Eugenio, San Fernando and Colonia San Damian.

42.     The acts described herein were committed by, at the instigation of, with the consent or acquiescence of, or in conspiracy with, an official or person acting in an official capacity, and

---

[4] See https://www.laprensagrafica.com/elsalvador/Capturan-a-jueza-de-Sentencia-de-Sonsonate-por-el-delito-de-estafa-20170523-0030.html

were inflicted deliberately and intentionally. The injuries were inflicted under color of law and under official authority, for one or more of the following purposes: to obtain information or a confession from the victim or a third person; to punish the victim for an act the victim or a third person committed or was suspected of having committed; to intimidate or coerce the victim or a third person; and/or due to the perceived status of the plaintiffs or their next of kin.

43.   The unlawful acts perpetrated against the Plaintiffs and their next of kin described herein were part of a widespread, systematic or large-scale attack designed, ordered, implemented, participated in and/or directed by members of El Salvador's military against civilian individuals in the military's overreaching efforts to "police" the civilian population and purge the civilian population of gang members. The unlawful acts of the government officials were done under the collar of the law.

44.   As a direct and proximate result of the Defendants' unlawful conduct, the Plaintiffs and their next of kin have suffered and will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress and the Plaintiffs have incurred and will continue to incur medical expenses. Plaintiffs are thereby entitled to general and compensatory damages in amounts to be proven at trial.

45.   The conduct of the Defendants as described herein, was malicious, fraudulent and/or oppressive and done with willful and conscious disregard for the Plaintiffs' rights and of the deleterious consequences of their actions. Consequently, the Plaintiffs are entitled to punitive damages.

### FIRST CLAIM FOR RELIEF
*(Extrajudicial Killing)*

46.   Plaintiffs José Amilcar Choto Pleitez, Gloria Esperanza Choto, Maria Yolanda Mejia de Hernandez, Pedro Antonio Levia, Snaijjder Stanley Leiva Rivas, and Maria Francisca Gomez

Viuda de Ramos, on behalf of their next of kin, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

47.     Defendants participated in the extrajudicial killing of the Plaintiffs' next of kin, José Fernando Choto Choto, Oscar Leiva Mejia, and Francisco Hernandez Gomez. The abduction and killing of the three young men were carried out deliberately under color of official authority for purposes other than as lawful punishment in accordance with due process of law or in accordance with a previous judgment pronounced by a regularly constituted court affording all necessary judicial guarantees which are recognized as indispensable by civilized peoples.

48.     This act of extrajudicial killing violated customary international law; 28 U.S.C. §1350; 28 U.S.C. § 1350 Note; the common law of the United States; and relevant international treaties, agreements, conventions and resolutions.

49.     The abduction and killing of the Defendants' sons (and father of Plaintiff Snaijjder Stanley Leiva Rivas) caused Plaintiffs José Amilcar Choto Pleitez, Gloria Esperanza Choto, Maria Yolanda Mejia de Hernandez, Pedro Antonio Levia, Snaijjder Stanley Leiva Rivas, and Maria Francisca Gomez Viuda de Ramos, to fear for their own lives and to suffer severe mental anguish. Further, Plaintiffs' next of kin, José Fernando Choto Choto, Oscar Leiva Mejia, and Francisco Hernandez Gomez, were placed in great fear for their lives and suffered severe physical and mental abuse and agony prior to their killing.

50.     As a result of the extrajudicial killing described herein, the Plaintiffs have been damaged in an amount to be determined at trial.

51.     Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive and should be punished by an award of punitive damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
*(Crimes Against Humanity)*

52.     Plaintiffs José Amilcar Choto Pleitez, Gloria Esperanza Choto, Maria Yolanda Mejia de Hernandez, Pedro Antonio Levia, Snaijjder Stanley Leiva Rivas, and Maria Francisca Gomez Viuda de Ramos, on behalf of their next of kin, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 51 as if fully set forth herein.

53.     The acts described herein and committed by the Defendants constitute crimes against humanity in violation of customary international law and are actionable under the Alien Tort Statute.

54.     Crimes against humanity constitute a constellation of inhumane acts prohibited by international and domestic law when they are committed as part of a widespread or systematic attack against a civilian population. Specifically, Defendants' acts constituted murder, imprisonment or other severe deprivation of physical liberty, torture, persecution, and other inhumane acts of a similar character. The inhumane and persecutory acts described herein were willfully inflicted as part of a widespread or systematic attack against the civilian population of El Salvador by its own government officials.

55.     Leaders, organizers, instigators, and accomplices participating in the formulation or implementation of a common plan to commit these crimes against humanity are responsible for all acts performed by any person in execution of such a plan. In addition to the soldiers being personally liable for committing crimes against humanity, the other Defendants are liable for the crimes against humanity committed by their subordinates and co-conspirators.

56.    The acts described herein placed José Fernando Choto Choto, Oscar Leiva Mejia, and Francisco Hernandez Gomez in great fear for their lives, separated them from their family members, unlawfully deprived them of their freedom, caused them to suffer severe mental anguish, and ultimately took their lives.

57.    As a result of the crimes against humanity described above, the Plaintiffs have been damaged in an amount to be determined at trial.

58.    Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive and should be punished by an award of punitive damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
*(Cruel, Inhuman and Degrading Treatment)*

59.    Plaintiffs José Amilcar Choto Pleitez, Gloria Esperanza Choto, Maria Yolanda Mejia de Hernandez, Pedro Antonio Levia, Snaijjder Stanley Leiva Rivas, and Maria Francisca Gomez Viuda de Ramos, on behalf of their next of kin, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 58 as if fully set forth herein.

60.    The acts described herein had the intent and the effect of grossly humiliating and debasing the victims, José Fernando Choto Choto, Oscar Leiva Mejia, and Francisco Hernandez Gomez, inciting in them fear and anguish, and breaking their physical or moral resistance.

61.    The acts described herein were inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

62.    The acts described herein violated customary international law, 28 U.S.C. §1350, the common law of the United States, and relevant international treaties, agreements, conventions and resolutions.

63.     The acts described herein placed the victims in great fear for their lives, separated them from their family members, and caused them to suffer severe mental anguish. As a result of the cruel, inhuman and degrading treatment described above, the Plaintiff family members have been damaged in an amount to be determined at trial.

64.     Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive and should be punished by an award of punitive damages in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
*(Arbitrary Detention)*

65.     Plaintiffs José Amilcar Choto Pleitez, Gloria Esperanza Choto, Maria Yolanda Mejia de Hernandez, Pedro Antonio Levia, Snaijjder Stanley Leiva Rivas, and Maria Francisca Gomez Viuda de Ramos, on behalf of their next of kin, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 64 as if fully set forth herein.

66.     Defendants' involvement in the arbitrary detention of José Fernando Choto Choto, Oscar Leiva Mejia, and Francisco Hernandez Gomez was illegal and unjust. Defendants detained the victims without warrant, probable cause, articulable suspicion, or notice of charges, and failed to accord them due process in a fair and impartial trial.

67.     The act of arbitrary detention described herein was inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

68.     Defendants' acts constituted arbitrary detention in violation of customary international law, 28 U.S.C. § 1350, the common law of the United States, the statutes and common law of the State of New York, the laws of El Salvador, and relevant international treaties, agreements, conventions and resolutions.

17

69.     As a result of the Defendants' acts, José Fernando Choto Choto, Oscar Leiva Mejia, and Francisco Hernandez Gomez placed in great fear for their lives, were separated from their separated from his family members, and experienced severe physical and psychological abuse and agony.

70.     As a result of this arbitrary detention, victim's family members have been damaged in an amount to be determined at trial.

71.     Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive and should be punished by an award of punitive damages in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
*(Wrongful Death)*

72.     Plaintiffs José Amilcar Choto Pleitez, Gloria Esperanza Choto, Maria Yolanda Mejia de Hernandez, Pedro Antonio Levia, Snaijjder Stanley Leiva Rivas, and Maria Francisca Gomez Viuda de Ramos, on behalf of their next of kin, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

73.     Defendants' involvement in the extrajudicial killing of José Fernando Choto Choto, Oscar Leiva Mejia, and Francisco Hernandez Gomez constituted wrongful death, actionable under the common law of the United States, the statutes and common law of the State of New York, and the laws of El Salvador.

74.     As a result of Defendants' actions, José Fernando Choto Choto, Oscar Leiva Mejia, and Francisco Hernandez Gomez were placed in great fear for his life and experienced severe physical and psychological abuse and agony prior to their wrongful deaths.

75.     As a result of these wrongful death, the victims' family members have been damaged in an amount to be determined at trial.

76.    Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive and should be punished by an award of punitive damages in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
*(Intentional Infliction of Emotional Distress)*

77.    Plaintiffs José Amilcar Choto Pleitez, Gloria Esperanza Choto, Maria Yolanda Mejia de Hernandez, Pedro Antonio Levia, Snaijjder Stanley Leiva Rivas, and Maria Francisca Gomez Viuda de Ramos, on behalf of their next of kin, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 76 as if fully set forth herein.

78.    Defendants' crimes against humanity, extrajudicial killing, torture, forced disappearance, arbitrary detention and other acts of cruel, inhuman and degrading treatment constituted outrageous conduct in violation of all normal standards of decency and were without privilege or justification.

79.    Defendants' outrageous conduct was intentional and malicious and done for the purposes of causing José Fernando Choto Choto, Oscar Leiva Mejia, and Francisco Hernandez Gomez and their family members to suffer humiliation, mental anguish and extreme emotional and physical distress. The arbitrary detention and extrajudicial killing of the victims caused his family members, the Plaintiffs, severe mental and physical agony.

80.    Defendants' outrageous conduct constitutes intentional infliction of emotional distress and is actionable under the laws of the State of New York and the country of El Salvador.

81.    As a result of the intentional infliction of emotional distress described above, the Plaintiffs have been damaged in an amount to be determined at trial.

82.     Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive and should be punished by an award of punitive damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
*(Civil Conspiracy)*

83.     Plaintiffs José Amilcar Choto Pleitez, Gloria Esperanza Choto, Maria Yolanda Mejia de Hernandez, Pedro Antonio Levia, Snaijjder Stanley Leiva Rivas, and Maria Francisca Gomez Viuda de Ramos, on behalf of their next of kin, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 82 as if fully set forth herein.

84.     The acts described herein were committed in furtherance of a conspiracy among El Salvador's military and political figures, including the Defendants, to detain, harm, disappear, and/or eliminate civilians perceived to be gang members.

85.     The acts described herein constitute a conspiracy to violate the human rights of José Fernando Choto Choto, Oscar Leiva Mejia, and Francisco Hernandez Gomez in violation of customary international law; 28 U.S.C. §1350, 28 U.S.C. §1350 Note; the common law of the United States; the laws of the State of New York; the laws of the country of El Salvador; and relevant international treaties, agreements, conventions and resolutions.

86.     As a result of the civil conspiracy described herein, the Plaintiffs have been damaged in an amount to be determined at trial.

87.     Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive and should be punished by an award of punitive damages in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
*(Loss of Parental Guidance and Support)*
(Plaintiff Snaijjder Stanley Leiva Rivas)

88.    Plaintiff Snaijjder Stanley Leiva Rivas, on behalf of his next of kin, Oscar Leiva Mejia, realleges and incorporates by reference the allegations set forth in paragraphs 1 through 87 as if fully set forth herein.

89.    As alleged above, and as a result of the conduct of the Defendants, Plaintiff Snaijjder Stanley Leiva Rivas suffered the loss of his father, Oscar Leiva Mejia.

90.    As a direct and proximate result of the afore-mentioned loss suffered by Plaintiff Snaijjder Stanley Leiva Rivas, he has been deprived, continues to be deprived, and expects to be deprived in the future, of his father's affection, love, parental support and financial assistance for a non-determinable length of time, which deprivation has caused, continues to cause, and in the future is expected to cause Plaintiff to suffer depression, emotional distress, loss of earning capacity, past, present, and future, and other injuries, the full extent of which has not yet been ascertained, but which will be stated according to proof at trial.

91.    As a further direct and proximate result of the aforesaid conduct of defendants, Plaintiff Snaijjder Stanley Leiva Rivas has sustained a loss of consortium, love, society, comfort, affection and financial support with respect to his father and has thereby sustained pecuniary loss in a sum within the jurisdictional limits of the Court, which will be stated according to proof at trial.

92.    Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive and should be punished by an award of punitive damages in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF
### *(Loss of Consortium)*
(Plaintiffs José Amilcar Choto Pleitez, Gloria Esperanza Choto, Maria Yolanda Mejia de
Hernandez, Pedro Antonio Levia, and Maria Francisca Gomez Viuda de Ramos)

93.    Plaintiffs José Amilcar Choto Pleitez, Gloria Esperanza Choto, Maria Yolanda Mejia de

Hernandez, Pedro Antonio Levia, and Maria Francisca Gomez Viuda de Ramos, on behalf of

their next of kin, reallege and incorporate by reference the allegations set forth in paragraphs

1 through 92 as if fully set forth herein.

94.    As alleged above, and as a result of the conduct of the Defendants, Plaintiffs suffered the

loss of their sons, José Fernando Choto Choto, Oscar Leiva Mejia, and Francisco Hernandez

Gomez.

95.    As a direct and proximate result of the afore-mentioned loss suffered by Plaintiffs, they has

been deprived, continue to be deprived, and expect to be deprived in the future, of their

affection, love, support and financial assistance for a non-determinable length of time, which

deprivation has caused, continues to cause, and in the future is expected to cause Plaintiffs to

suffer depression, emotional distress, loss of earning capacity, past, present, and future, and

other injuries, the full extent of which has not yet been ascertained, but which will be stated

according to proof at trial.

96.    As a further direct and proximate result of the aforesaid conduct of defendants, Plaintiffs

have sustained a loss of consortium, love, society, comfort, affection and financial support with

respect to their sons and have thereby sustained pecuniary loss in a sum within the

jurisdictional limits of the Court, which will be stated according to proof at trial.

97.    Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive

and should be punished by an award of punitive damages in an amount to be determined at

trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

    a)  For compensatory damages according to proof;

    b)  For punitive and exemplary damages according to proof;

    c)  For reasonable attorneys' fees and costs of suit, according to proof;

    d)  For injunctive relief necessary to avoid liquidation or transfer of assets; and

    e)  For such other and further relief as the court may deem just and proper.

A jury trial is demanded on all issues.

Dated: February 17, 2021

Respectfully submitted,

*Charlie Carrillo*
_____
Charlie Carrillo, Esq.
259 West Patrick Street
Frederick, MD 21701
Phone: (301) 378-8595
Email: charlie@carrillobrux.com
Attorney for Plaintiffs

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I, Charlie Carrillo, hereby certify that on February 17, 2021, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all

the registered CM/ECF users.

*Charlie Carrillo*

Charlie Carrillo, Esq.
259 West Patrick Street
Frederick, MD 21701
Phone: (301) 378-8595
Email: charlie@carrillobrux.com
Attorney for Plaintiffs